[No. S116223. Aug. 1, 2005.]

DAVID JAY FITCH, a Minor, etc., et al., Plaintiffs and Respondents, v.
SELECT PRODUCTS COMPANY, Defendant;
STATE DEPARTMENT OF HEALTH SERVICES, Claimant and Appellant.

## COUNSEL

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Andrea Hoch, Chief Assistant Attorney General, James Humes, Assistant Attorney General, John H. Sanders, John Venegas and Karen Ackerson-Brazille, Deputy Attorneys General, for Claimant and Appellant.

Andrews & Hensleigh, Joseph Andrews and John J. Aumer for Plaintiffs and Respondents.

OPINION

**KENNARD, J.**—May a Medi-Cal lien for costs incurred in treating a decedent's final illness be asserted against a recovery in a wrongful death action when that recovery does not and could not include those medical expenses? The answer is "no."

### I

Elan Jay Fitch (Fitch or decedent) contracted cancer while working for the Southland Corporation (Southland) as a diesel mechanic. Medi-Cal, a program administered by the California Department of Health Services (DHS), paid the medical expenses to treat Fitch's cancer. When Fitch filed a workers' compensation claim against Southland, alleging that workplace exposure to carcinogenic chemicals was the cause of the cancer, the DHS filed a lien in the workers' compensation proceeding to recover $106,700.40 it had paid for Fitch's medical treatment. In September 1993, Fitch died of the cancer, survived by his wife, Dianne, and three minor children.

On January 27, 1995, while the workers' compensation proceeding was pending, Fitch's widow brought a tort action seeking damages resulting from Fitch's illness and death. She brought the action as an individual, as the representative of her husband's estate, and on behalf of the three minor children. The complaint named Select Products Company (Select) as one of the defendants, alleging that Fitch's illness and death was caused by a coating product manufactured by Select that Fitch had used in his work. In September 1996, the trial court ruled that the statute of limitations barred the action by Fitch's widow as an individual and as the representative of Fitch's estate; thereafter, this action proceeded as a wrongful death action by Fitch's three minor children, with Dianne acting as their guardian ad litem.

On August 5, 1998, Dianne settled the workers' compensation claim with Fitch's former employer, Southland. As part of the settlement, Southland agreed to "pay, adjust, or litigate all liens . . . ." Southland then settled the DHS's lien in the workers' compensation proceeding for $40,000, with the DHS reserving "all rights to pursue reimbursement/recovery in any third party claim . . . ."

In October 1999, the DHS filed in the wrongful death action a Medi-Cal lien in the amount of $66,795.98 (representing the amount the DHS claimed in the workers' compensation case, less the $40,000 that the DHS had already

obtained in the settlement of that proceeding). In March 2000, plaintiffs (the three Fitch children) moved to strike the DHS lien, asserting that the lien violated the workers' compensation settlement agreement. The trial court declined to rule on the motion, stating that the matter was within the exclusive jurisdiction of the Workers' Compensation Appeals Board (WCAB). Thereafter, in the workers' compensation proceeding, plaintiffs asked the WCAB for a determination that Southland's $40,000 payment to the DHS in the workers' compensation case had fully satisfied and extinguished the DHS's Medi-Cal lien. The WCAB concluded that it lacked jurisdiction over the $66,795.98 lien the DHS asserted in plaintiffs' civil wrongful death action.

Plaintiffs' wrongful death action proceeded to trial against Select alone (other defendants had either settled or been dismissed). During the trial, the court granted a defense motion to preclude plaintiffs from introducing evidence of the DHS's Medi-Cal lien. The court also ruled that defendant Select could not be held liable in a wrongful death action for decedent's medical expenses, as those expenses could only be recovered in an action by Dianne as the representative of her husband's estate, and the court had already ruled that such an action was barred by the statute of limitations. The trial resulted in a judgment for plaintiffs in the amount of $682,598.50.

After the trial, plaintiffs renewed their motion in the superior court to strike the DHS lien. The court granted the motion, ruling that because the damages recoverable in plaintiffs' wrongful death action did not and could not include the decedent's medical expenses, the DHS could not recover such expenses by asserting a lien against a recovery by plaintiffs in the wrongful death action. The DHS appealed.

The Court of Appeal reversed. It held that the statutes governing third party liability for Medi-Cal benefits imposed on the DHS a right and an obligation to assert the lien in plaintiffs' wrongful death action, that the exclusive jurisdiction of the WCAB does not extend to Medi-Cal liens, and that federal law does not preempt California's Medi-Cal lien procedures. We granted review.

## II

Plaintiffs contend that the statutes governing Medi-Cal liens in actions against third parties do not authorize Medi-Cal liens in wrongful death actions in which the plaintiff's recovery does not include medical expenses incurred by the decedent. The issue they raise, being one of statutory

construction, is governed by well-established principles. The objective of statutory construction is to determine the intent of the enacting body so that the law may receive the interpretation that best effectuates that intent. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].) "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." (*Ibid.*) If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls. (*In re Jennings* (2004) 34 Cal.4th 254, 263 [17 Cal.Rptr.3d 645, 95 P.3d 906].)

■ The Welfare and Institutions Code authorizes the DHS to recover the value of Medi-Cal-provided medical treatment from third parties who have caused the injury that required the treatment. (Welf. & Inst. Code, § 14124.70 et seq.; unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.) The statutory scheme permits the DHS to obtain this recovery either by bringing its own action against the third party or by asserting a lien in another person's action against the third party, as discussed, *post.*

Section 14124.71 provides: "When benefits are provided . . . to a beneficiary . . . *because of an injury for which another person is liable, . . . the director shall have a right to recover from such person* . . . the reasonable value of the benefits so provided." (§ 14124.71, subd. (a), italics added.) It also authorizes the Attorney General (and certain other persons and entities) to bring a direct action against the third party on behalf of the DHS: "The Attorney General . . . may, to enforce such right, institute and prosecute legal proceedings against the third person or carrier who may be liable for the injury in an appropriate court, either in the name of the director [of the DHS] or in the name of the injured person, his guardian, conservator, personal representative, estate, or survivors." (*Ibid.*)

Section 14124.71 also allows the DHS, acting through its director, to "[c]ompromise, or settle and release any such claim, or [to] [¶] . . . [w]aive any such claim, in whole or in part, for the convenience of the director, or if the director determines that collection would result in undue hardship upon the person who suffered the injury, or in a wrongful death action upon the heirs of the deceased." (§ 14124.71, subd. (b).) To further protect the interests of the beneficiary and his or her estate and survivors, section 14124.71 states that "[n]o action taken in behalf of the director [of the DHS] pursuant to this

section . . . shall operate to deny to the beneficiary the recovery for that portion of any damages not covered hereunder." (§ 14124.71, subd. (c).)

Section 14124.72 authorizes the DHS to assert a lien against a recovery from a third party: "When an action or claim is brought by persons entitled to bring such actions or assert such claims against a third party who may be liable for causing the death of a beneficiary, any settlement, judgment or award obtained is subject to the director's right to recover from that party the reasonable value of the benefits provided to the beneficiary under the Medi-Cal program . . . ." (§ 14124.72, subd. (c).) When the beneficiary has brought the action in which the DHS asserts a lien, and has incurred a personal liability for attorney fees, the DHS's recovery is "limited to the reasonable value of benefits provided to the beneficiary under the Medi-Cal program less 25 percent[,] which represents the [DHS's] reasonable share of attorney's fees paid by the beneficiary[,] and that portion of the cost of litigation expenses determined by multiplying by the ratio of the full amount of the reasonable value of benefits so provided to the full amount of the judgment, award, or settlement." (§ 14124.72, subd. (d).)

Finally, section 14124.70 defines "beneficiary" to mean "any person who has received benefits . . . because of an injury for which another person or party may be liable" and to include "such beneficiary's guardian, conservator or other personal representative, his estate or survivors." (§ 14124.70, subd. (b).)

█ We conclude that the statutory scheme discussed, *ante*, does not authorize the DHS to assert a Medi-Cal lien against a wrongful death recovery that does not include compensation for the Medi-Cal beneficiary's medical expenses. To understand why we reach this conclusion, it is necessary to examine the nature of a wrongful death action under California law.

█ In California, a wrongful death action is " 'a *new cause of action* in favor of the heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a relative, and distinct from any the deceased might have maintained had he survived.' " (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 283 [87 Cal.Rptr.2d 222, 980 P.2d 927], quoting 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1197, pp. 632–633.) Because the damages awarded in a wrongful death action are for the harm done to the survivors, not to the deceased, medical expenses for treating the final illness or injury are not recoverable. (*Gallup v. Sparks-Mundo Engineering Co.* (1954) 43 Cal.2d 1, 10–12 [271 P.2d 34]; *Aetna Casualty & Surety Co. v. Superior Court* (1980) 114 Cal.App.3d 49, 57 [170 Cal.Rptr. 527]; *DeMeo v.*

*St. Francis Hosp.* (1974) 39 Cal.App.3d 174, 176 [114 Cal.Rptr. 280]; *Pac. Emp. Ins. Co. v. Hartford etc. Ins. Co.* (1956) 143 Cal.App.2d 646, 648 [299 P.2d 928]; see Code Civ. Proc., §§ 377.34, 377.61.)

■ The key provision is subdivision (a) of section 14124.71, stating that "[w]hen benefits are provided . . . to a beneficiary . . . because of an injury for which *another person* is liable . . . the director shall have a right to recover *from such person* . . . the reasonable value of the benefits so provided." (Italics added.) Because the damages awarded in a wrongful death action are compensation for the harm to the survivors rather than to the decedent, and because those damages do not include medical expenses incurred in treating the decedent, to allow the DHS to recover the decedent's medical expenses from the wrongful death damages would reduce those damages below the amount needed to fully compensate the survivors for the harm done to them. Such a recovery would not be from the third party tortfeasor, but from the decedent's innocent survivors (see *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 820–822 [135 Cal.Rptr.2d 1, 69 P.3d 927]), and therefore it is not statutorily authorized.

■ The provision dealing with Medi-Cal liens—subdivision (c) of section 14124.72—is consistent with this interpretation. It authorizes the DHS to use the lien procedure to recover the value of Medi-Cal benefits only from "a third party who may be liable for causing the death of a beneficiary," not from the decedent's innocent survivors who have brought an action against that third party, and it limits the recovery to "the reasonable value of the benefits provided to the beneficiary under the Medi-Cal program." (§ 14124.72, subd. (c).) Because this subdivision authorizes the DHS to recover the benefits it has provided to the beneficiary only from the third party that caused the beneficiary's death, it necessarily implies that lien recovery is permitted only when the damages recovered from the third party include the cost of medical treatment or other benefits provided by Medi-Cal.

■ This reading finds support in subdivision (c) of section 14124.71, which declares that "[n]o action taken in behalf of the director [of the DHS] pursuant to this section . . . shall operate to deny to the beneficiary the recovery for that portion of any damages not covered hereunder." (§ 14124.71, subd. (c).) Through this provision, the Legislature expressed its intent that the DHS's right to Medi-Cal reimbursement must not operate to deny the beneficiary (which is statutorily defined to include a beneficiary's survivors) any damages that are "not covered" by Medi-Cal. In this case, that means damages other than those awarded for the cost of medical treatment. Because none of the survivors' wrongful death damages are attributable to the

costs of the decedent's medical treatment, the DHS may not assert the Medi-Cal lien against those damages.

Urging a different interpretation of the Medi-Cal reimbursement statutes, the DHS relies on *Shelton v. Fresno Community Hospital* (1985) 174 Cal.App.3d 39 [219 Cal.Rptr. 722] (*Shelton*), in which a wrongful death action by the decedent's minor son and husband was combined with an action by the decedent's husband, as the decedent's personal representative, for damages the decedent sustained before death. (See Code Civ. Proc., § 377.62 [permitting joinder of such actions].) The parties settled the personal representative's action, which included a claim for the decedent's medical expenses, for $215,000, and they settled the wrongful death action for $1,920,236. (*Shelton, supra,* at p. 42.) The DHS asserted a Medi-Cal lien for medical expenses in the amount of $17,361.86. The plaintiffs, decedent's minor son and husband, brought a motion to extinguish the lien, the trial court denied the motion, the plaintiffs appealed, and the Court of Appeal affirmed. (*Id.* at pp. 42–43.)

The *Shelton* Court of Appeal reached the correct result, but it erred in the portion of its analysis on which the DHS relies here. The result in *Shelton* was correct, and the Medi-Cal lien was valid, because the action was not only a wrongful death action but also an action by the decedent's personal representative. The settlement, which covered both actions, included compensation for the decedent's medical expenses, which the plaintiff husband had sought as the decedent's personal representative. The DHS was entitled to assert its Medi-Cal lien against this portion of the settlement payment, which did not include the wrongful death damages. In explaining why the DHS could assert the lien, however, the Court of Appeal mistakenly relied on section 14124.71, subdivision (b)(2), for the broad proposition that the DHS may assert a Medi-Cal lien against damages recovered in a wrongful death action. (*Shelton, supra,* 174 Cal.App.3d at pp. 42–43.)

 Section 14124.71, subdivision (b)(2), grants the DHS's director the authority, *in actions brought by the DHS directly against third parties,* to waive its reimbursement claim when "collection would result in undue hardship upon the person who suffered the injury, or in a wrongful death action upon the heirs of the deceased." In other words, this provision allows the DHS to waive the Medi-Cal recovery when its collection from the third party would impose undue hardship upon the beneficiary's survivors in the prosecution of a wrongful death action. An example would be when the third party's assets or insurance coverage would be insufficient, after reimbursing the DHS for Medi-Cal benefits, to compensate the wrongful death plaintiffs.

The provision at issue simply allows the director to waive the DHS's rights in a direct action against a third party, if doing so would prevent hardship to the beneficiary's survivors. It does not, however, give the DHS the authority to assert a lien in a separate wrongful death action, at the expense of the beneficiary's survivors.

■ The same is true of another provision that the *Shelton* Court of Appeal relied upon—section 14124.72, subdivision (b), which provides that "[t]he death of the beneficiary does not abate any right of action established by Section 14124.71." (See *Shelton, supra,* 174 Cal.App.3d at p. 44.) That provision merely authorizes the DHS to bring an action to recover from a third party tortfeasor the costs incurred in providing medical treatment to a beneficiary after the beneficiary's death. It is not authority for the broad proposition by the DHS that it can generally assert a lien against a recovery in a wrongful death case brought by the decedent's survivors that does not include damages for the decedent's medical expenses.[1]

Also unpersuasive is the DHS's reliance on section 14124.78, which provides: "Except as otherwise provided in this article, notwithstanding any other provision of law, the entire amount of any settlement of the injured beneficiary's action or claim, with or without suit, is subject to the director's claim for reimbursement of the reasonable value of benefits provided and any lien filed pursuant thereto, but in no event shall the director's claim exceed one-half of the beneficiary's recovery after deducting for attorney's fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary." Because this provision applies only to settlements of the injured beneficiary's action or claim and this case does not involve settlement of an injured beneficiary's action or claim, it is not relevant here.

■ For the reasons given, *ante,* we hold that a Medi-Cal lien may not be asserted in a wrongful death action when the damages recoverable by the plaintiff in that action do not and could not include compensation for medical services provided to the decedent by Medi-Cal.

---

[1] *Shelton v. Fresno Community Hospital, supra,* 174 Cal.App.3d 39, is disapproved to the extent it is inconsistent with the views expressed here.

## DISPOSITION

The judgment of the Court of Appeal is reversed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.