[No. F005855. Fifth Dist. Jan. 23, 1987.]

THE PEOPLE, Plaintiff and Appellant, v.
WILLIAM DAVID BURROUGHS, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Garrett Beaumont, W. Scott Thorpe and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Appellant.

Gordon Hollingsworth, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION

**VARTABEDIAN, J.***—The People appeal the trial court's ruling disallowing the People's principal witness to testify as he previously had been hypnotized.

Respondent was convicted of kidnapping for ransom and assault with a deadly weapon. At trial, the victim, Jon Zagaris testified. The victim had been hypnotized by a police officer four days after the kidnapping. Under the rules announced in *People* v. *Shirley* (1982) 31 Cal.3d 18, 66-67 [181 Cal.Rptr. 243, 641 P.2d 775], and *People* v. *Guerra* (1984) 37 Cal.3d 385, 390 [208 Cal.Rptr. 162, 690 P.2d 635], on February 20, 1985, we reversed respondent's convictions, finding he was prejudiced by the erroneous admission of the testimony of the previously hypnotized victim. (*People* v. *Burroughs* (Feb. 20, 1985) F000625 [nonpub. opn.] (hereafter *Burroughs I, supra*).)

On June 17, 1985, the date set for retrial, respondent moved to exclude the testimony of the victim Jon Zagaris on the ground that he previously had been hypnotized. Relying on *Shirley, Guerra* and this court's opinion, the trial court granted the motion. The trial court then dismissed the case pursuant to Penal Code section 1385 after being informed by the People they were unable to proceed with the case without Zagaris's testimony.

The sole issue on appeal is the propriety of the trial court's ruling that Zagaris was incompetent to testify.

*Assigned by the Chairperson of the Judicial Council.

In *People* v. *Shirley,* the California Supreme Court held "that the testimony of a witness who has undergone hypnosis for the purpose of restoring his memory of the events in issue is inadmissible as to all matters relating to those events, from the time of the hypnotic session forward." (*People* v. *Shirley, supra,* 31 Cal.3d at pp. 66-67.) In *People* v. *Guerra,* decided on November 21, 1984, the California Supreme Court held the rule announced in *Shirley* applied to all cases not yet final as of the date *Shirley* was decided. (*People* v. *Guerra, supra,* 37 Cal.3d at p. 390.) The majority in *Guerra* made no mention of Evidence Code section 795,[1] passed by the Legislature and approved by the Governor on July 17, 1984, which went into effect January 1, 1985.

Section 795 provides: "(a) The testimony of a witness is not inadmissible in a criminal proceeding by reason of the fact that the witness has previously undergone hypnosis for the purpose of recalling events which are the subject of the witness' testimony, if all of the following conditions are met:

"(1) The testimony is limited to those matters which the witness recalled and related prior to the hypnosis.

"(2) The substance of the prehypnotic memory was preserved in written, audiotape, or videotape form prior to the hypnosis.

"(3) The hypnosis was conducted in accordance with all of the following procedures:

"(A) A written record was made prior to hypnosis documenting the subject's description of the event, and information which was provided to the hypnotist concerning the subject matter of the hypnosis.

"(B) The subject gave informed consent to the hypnosis.

"(C) The hypnosis session, including the pre- and post-hypnosis interviews, was videotape recorded for subsequent review.

"(D) The hypnosis was performed by a licensed medical doctor or psychologist experienced in the use of hypnosis and independent of and not in the presence of law enforcement, the prosecution, or the defense.

"(4) Prior to admission of the testimony, the court holds a hearing pursuant to Section 402 of the Evidence Code at which the proponent of the evidence proves by clear and convincing evidence that the hypnosis did

---

[1]All statutory references are to the Evidence Code unless otherwise indicated.

not so affect the witness as to render the witness' prehypnosis recollection unreliable or to substantially impair the ability to cross-examine the witness concerning the witness' prehypnosis recollection. At the hearing, each side shall have the right to present expert testimony and to cross-examine witnesses.

"(b) Nothing in this section shall be construed to limit the ability of a party to attack the credibility of a witness who has undergone hypnosis, or to limit other legal grounds to admit or exclude the testimony of that witness." The retrial in this case took place after the effective date of section 795.

In the final paragraphs of this court's opinion in *Burroughs I, supra,* we stated: "*The victim's testimonial incapacity as to the events explored at the hypnotic session would apply in any attempted retrial. (Evid. Code, § 795, subd. (a)(3)(D).)* Like the court in *Guerra,* we will abstain from deciding whether some potentially applicable types of prehypnotic evidence, 'e.g., a police report of a field interview of the witness immediately after a crime; a subsequent interrogation of the witness by a detective at the police station for the purpose of advancing the investigation of the crime; ... *trial testimony by the witness as to facts he claims to have remembered before hypnosis*; and trial testimony by other witnesses, including law enforcement authorities, as to statements assertedly made by the percipient witness before hypnosis' would be admissible at a retrial. (*People* v. *Guerra, supra,* at p. 428, fn. 45[.]) We merely note the potential hearsay or constitutional problems which such presentations might present." (*Burroughs I, supra,* typed opn. at p. 7, italics added.)

Unfortunately, inclusion of " 'trial testimony by the witness as to facts he claims to have remembered before hypnosis' " in the list quoted from *Guerra* of potentially admissible evidence made ambiguous our otherwise clear statement that Zagaris would be incompetent to testify about events covered at the hypnotic session under section 795.

■ Testimony about "those matters which the witness recalled and related prior to the hypnosis" (§ 795, subd. (a)(1)) and " 'facts he claims to have remembered before hypnosis' " (*Burroughs I, supra,* typed opn. p. 7, quoting from *People* v. *Guerra, supra,* 37 Cal.3d at p. 428, fn. 45) are the same.[2] Here, we clarify our holding in *Burroughs I, supra,* as to the potential admissibility of this type of evidence by reiterating that such testimony must meet the qualifications stated in subdivisions (a)(2), (a)(3) and (a)(4) of section 795.

---

[2]Actually, the prehypnotic recollections referred to in *Guerra* need not have been "related" to anyone.

■ Section 795 allows a previously hypnotized witness to testify about "matters which the witness recalled and related prior to the hypnosis" (subd. (a)(1) only when, among other requirements, "[t]he hypnosis was performed by a licensed medical doctor or psychologist experienced in the use of hypnosis and independent of and not in the presence of law enforcement, the prosecution, or the defense." (§ 795, subd. (a)(3)(D).) Zagaris's hypnotic session was conducted by a law enforcement officer, clearly falling outside section 795 standards. Thus, if section 795 applies, the trial court correctly excluded the testimony of Zagaris as to events covered at the hypnotic session.

The People label the application of section 795 to respondent's retrial as "retroactive" and impermissible absent special considerations.

■ Generally, the rules of evidence in effect at the time of trial govern the admissibility and exclusion of evidence at that trial. (See § 12; *Garfield* v. *Russell* (1967) 251 Cal.App.2d 275, 278 [59 Cal.Rptr. 379].) Constitutional constraints may sometimes make application of a new rule impermissible, e.g., where it operates as an ex post facto law. (See *People* v. *Smith* (1983) 34 Cal.3d 251, 259-262 [193 Cal.Rptr. 692, 667 P.2d 149].) "However, changes in evidentiary rules which broaden or narrow the class of persons competent to testify are not deemed ex post facto in operation. (*People* v. *Bradford* [1969] 70 Cal.2d 333, 343-344, fn. 5 [74 Cal.Rptr. 726, 450 P.2d 46].)" (*People* v. *Seldomridge* (1984) 154 Cal.App.3d 362, 364-365 [201 Cal.Rptr. 377]; see also *Hopt* v. *Utah* (1884) 110 U.S. 574 [28 L.Ed. 262, 4 S.Ct. 202] [application of statute making felons competent to testify not ex post facto].) It is not uncommon that admissibility of evidence be judged by a standard which was not in effect when the evidence came into being. (See *Department of Health Services* v. *Fontes* (1985) 169 Cal.App.3d 301, 304 [215 Cal.Rptr. 14]; *Strauch* v. *Superior Court* (1980) 107 Cal.App.3d 45, 48-49 [165 Cal.Rptr. 552].) Under the general rules, section 795 would apply.

■ The People claim, however, the Legislature did not intend section 795 to apply to any witness hypnotized before its effective date. They continue: "But even assuming arguendo that the Legislature somehow intended section 795 to have retroactive effect, that retroactive effect could only have been intended to reach back to the date of the *Shirley* opinion itself, March 11, 1982. That is, if section 795 was intended to counter the per se rule of *Shirley,* then the remedy of section 795 can only have been intended to reach back as far as the problem to be remedied."

Section 795 by its language does not limit its application only to potential witnesses hypnotized after its effective date or after the *Shirley* decision.

When passed, the Legislature did not have the benefit of the opinion in *Guerra*. The opinion in *Shirley* impliedly rejected creating an exception for prehypnotic memories. (31 Cal.3d at p. 48, fn. 29, p. 69, fn. 57.) The majority in *Guerra* discussed the potential application of such an "exception," but abstained from ruling on the question. (*People v. Guerra, supra,* 37 Cal.3d at pp. 428, 429.) Only Justice Kaus, joined by Justice Grodin, suggested affirmatively that such evidence should be admissible.[3]

The legislative history connected with section 795 gives insight into the Legislature's motivation. (See *Pollack v. Department of Motor Vehicles* (1985) 38 Cal.3d 367, 373 [211 Cal.Rptr. 748, 696 P.2d 141]; *Southern Cal. Gas Co. v. Public Utilities Com.* (1979) 24 Cal.3d 653, 658 [156 Cal.Rptr. 733, 596 P.2d 1149].) "Staff Comments: . . . . The purpose of the bill is to clarify the law as to when a witness may testify after having been hypnotized before trial. If the *Shirley* rule is followed, the witness may never testify. If Proposition 8 wholly overrules *Shirley,* a witness could testify in all cases after having been hypnotized. This bill would provide a middle ground and permit a witness to testify after having been hypnotized only if strict guidelines had been followed which would insure an adequate record upon which to judge whether hypnosis improperly contaminates the witness." (Assem. Com. on Criminal Law and Public Safety, Analysis of Assem. Bill No. 2669 (1983-1984 Reg. Sess.) in original form.)

The Legislature acted, declaring a previously hypnotized witness was not completely barred from testifying, at least to certain subjects when such testimony would be surrounded by several procedural safeguards. While it is extremely unlikely that prior to the enactment of the statute, all of the procedural safeguards would have been taken (see § 795, subds. (a)(3)(A)-(a)(3)(D)), this is as true after the decision in *Shirley* as before. The Legislature sought to ensure the integrity of the factfinding process, not to prescribe appropriate procedures for law enforcement authorities. The Legislature rejected the absolute bar to testimony of a previously hypnotized witness; it also clearly rejected the potential "anything goes" of Proposition 8 if *Shirley* were overruled.

As noted in the Senate Committee on Judiciary Analysis, "[t]his middle ground approach would put California in accord with the rules in nine other states . . . ." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2669 (1983-1984 Reg. Sess.) as amended June 20, 1984.) The bill's aim was to

---

[3]In his concurring opinion, Justice Kaus suggests that testimony as to prehypnosis memories should be allowed with certain safeguards, stating: "Accordingly, following the lead of the out-of-state decisions, I believe we should advise the trial court that, on retrial, the fact that the victim has undergone hypnosis does not necessarily bar her from testifying to events which the court finds that she recalled and related before the hypnosis session." (*Id.* at p. 432.)

bring California in line with those jurisdictions from whose cases Justice Kaus fashioned his pre-*Shirley* exception in *Guerra.*

■■ ■■ We conclude section 795 as enacted applies to hypnosis prior to its effective date where the evidence is proffered at a trial beginning after January 1, 1985. Therefore, the People's contention, that Zagaris should have been allowed to testify as to facts he claimed to remember before hypnosis, fails. The trial court's ruling disallowing him to testify about events covered at the hypnotic session was correct. (§ 795, subds. (a)(3)(C), (a)(3)(D).) And, insofar as the People tender that other forms of prehypnotic evidence should have been admissible,[4] these questions were not before the trial court, and will not be considered on appeal.

The People also contend Zagaris was competent to testify to his identification of Burroughs. In *Shirley,* the court noted: "Accordingly, if the prosecution should wish to question such a witness on a topic *wholly unrelated* to the events that were the subject of the hypnotic session, his testimony as to that topic would not be rendered inadmissible by the present rule." (31 Cal.3d at p. 67.)

The People argue that the identification of Burroughs "was unrelated to and independent of the hypnosis session." According to the People, Burroughs was unknown to the authorities at the time of the hypnotic session. A few days after the hypnotic session, an informant called the local newspaper and identified Burroughs as the kidnapper. The newspaper informed authorities and the authorities compiled a photographic identification lineup and presented it to Zagaris. He identified Burroughs. At a later live lineup, Zagaris also identified Burroughs. Because Burroughs could not have been suggested by the hypnotist, being unknown to him, the People argue the identification was not tainted by the hypnosis.

However, examination of the transcript of the hypnotic session reveals that a majority of the time the subject was under hypnosis he was questioned about his description of the kidnapper. Toward the end of the hypnotic session, the officer had the victim "correct" an earlier composite drawing. After changes were made to the composite drawing, and right before awakening the subject, the officer told him: "Now that you had an opportunity, Jon, to assist the identikit men, man, with a uh, fairly good reproduction of the responsible in this case and you have the responsible[']s picture embedded in your mind, vividly, if in the future you see this person or a

---

[4]The People offer on appeal that the officers who obtained the statements would be able, on retrial, to testify regarding the field interview of Zagaris immediately after the crime and the subsequent taped interrogation of Zagaris at the Modesto Police Department.

photograph of this person, you will immediately be able to recognize him and point him out or tell the police where he is."

This posthypnotic suggestion to the victim compromises any subsequent identification made. While the hypnotist did not pinpoint Burroughs as the perpetrator or "responsible," he ensured that the victim would "vividly" remember the perpetrator and "immediately be able to recognize him and point him out" tainting the identification process itself. Hypnosis, said *Shirley*, not only produces "pseudomemories," "the experience will tend to clothe the witness' entire testimony in an artificial but impenetrable aura of certainty." (*People* v. *Shirley, supra,* 31 Cal.3d at p. 69; see also *People* v. *Guerra, supra,* 37 Cal.3d at pp. 419, 421.)

We reject the People's claim that Zagaris's identification of Burroughs was unrelated to the hypnotic session.

The judgment of dismissal pursuant to Penal Code section 1385 is affirmed.

Martin, Acting P. J., and Best, J., concurred.

A petition for a rehearing was denied February 10, 1987, and appellant's petition for review by the Supreme Court was denied April 23, 1987.